JAMES H. FROTHINGHAM, executor, & others, *vs.* EDWARD
P. SHAW.

Essex.    January 24, 1899. — December 18, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, & LATHROP, JJ.

*Tax on Collateral Legacies and Successions — Will — "Property within the
Jurisdiction of the Commonwealth" — Succession by the Laws of the Com-
monwealth.*

At the trial of a petition by the executor of a will for instructions as to the pay-
ment of a collateral inheritance tax on the residuary legacies, it appeared that
when the testator died he was domiciled at S. in this Commonwealth, and nearly
all his estate, consisting of bonds and stock of foreign corporations, a certificate of
indebtedness of a foreign corporation, bonds secured by mortgage on real estate
in New Hampshire, the makers living in New York, and of cash on deposit with
a savings bank and with individuals in Brooklyn, was and had been for many
years with his agents in New York. There had been no administration in New
York, and the petitioner had taken possession of all the property except the real
estate, and had paid all debts and legacies except the residuary legacies, and
none of the legacies were entitled to exemption if otherwise liable to the tax.
*Held*, that the stocks, bonds, etc., were "property within the jurisdiction of the
Commonwealth," within the meaning of St. 1891, c. 425, § 1, and that the suc-
cession took place by virtue of the laws of this Commonwealth.

PETITION, to the Probate Court, by the executor of the will
of Joseph Frothingham, for instructions as to the payment of a
collateral inheritance tax on the residuary legacies. The case
was heard on agreed facts, and came here by successive appeals

from decrees of the Probate Court and of a single justice of this court finding that the tax was payable, and directing the executor to pay the same. The facts appear in the opinion.

*G. R. Nutter & T. L. Frothingham,* (of New York,) for the petitioners.

*A. W. DeGoosh,* Assistant Attorney General, for the respondent.

MORTON, J. At the time of his death the testator was domiciled at Salem, in this Commonwealth, and his estate, except certain real estate situated here and appraised at $2,100, and cash in a savings bank in Salem amounting to $993, was, and for many years had been, in the hands of his agents in New York, and consisted of bonds and stock of foreign corporations, a certificate of indebtedness of a foreign corporation, bonds secured by mortgage on real estate in New Hampshire, the makers living in New York, and of cash on deposit with a savings bank and with individuals in Brooklyn; — the total being upwards of $40,000.

There has been no administration in New York, and the petitioners have taken possession of all the property except the real estate, and have paid all of the debts and legacies except the residuary legacies. None of the legacies are entitled to exemption if otherwise liable to the tax.

The petitioners contend that the stocks, bonds, etc., were not " property within the jurisdiction of the Commonwealth," within the meaning of St. 1891, c. 425, § 1, and that, if they were, the succession took place by virtue of the law of New York and not of this State.

It is clear that if the question of the liability of the testator to be taxed in Salem for the property had arisen during his lifetime he would have been taxable for it under Pub. St. c. 11, §§ 4, 20, notwithstanding the certificates, etc., were in New York; *Kirtland* v. *Hotchkiss,* 100 U. S. 491; *State Tax on Foreign-Held Bonds,* 15 Wall. 300; Cooley, Taxation, (2d ed.) 371; and the liability would have extended to and included the bonds secured by mortgage. *Kirtland* v. *Hotchkiss* and *State Tax on Foreign-Held Bonds, ubi supra. Hale* v. *County Commissioners,* 137 Mass. 111. It is true that the Public Statutes provide that personal property wherever situated, whether within or without

the Commonwealth, shall be taxed to the owner in the place where he is an inhabitant. But it is obvious that the Legislature cannot authorize the taxation of property over which it has no control, and the principle underlying the provision is that personal property follows the person of the owner, and properly may be regarded, therefore, for the purposes of taxation, as having a situs at his domicil, and as being taxable there. After the testator's death the property would have been taxable to his executors for three years or until distributed and paid over to those entitled to it, and notice thereof to the assessors ; showing that the fiction, if it is one, is continued for the purposes of taxation after the owner's death. Pub. St. c. 11, § 20, cl. 7. *Hardy* v. *Yarmouth*, 6 Allen, 277. In the present case the tax is not upon property as such, but upon the privilege of disposing of it by will, and of succeeding to it on the death of the testator or intestate, and it " has some of the characteristics of a duty on the administration of the estates of deceased persons." *Minot* v. *Winthrop*, 162 Mass. 113, 124. *Callahan* v. *Woodbridge*, 171 Mass. 595. *Greves* v. *Shaw*, 173 Mass. 205. *Moody* v. *Shaw*, 173 Mass. 375. In arriving at the amount of the tax the property within the jurisdiction of the Commonwealth is considered, and we see no reason for supposing that the Legislature intended to depart from the principle heretofore adopted, which regards personal property for the purposes of taxation as having a situs at the domicil of its owner. This is the general rule, Cooley on Taxation, (2d ed.) 372 ; and though it may and does lead to double taxation, that has not been accounted a sufficient objection to taxing personal property to the owner during his life at the place of his domicil, and we do not see that it is a sufficient objection to the imposition of succession taxes or administration duties under like circumstances after his death.

In regard to the mortgage bonds it is to be noted, in addition to what has been said, that this case differs from *Callahan* v. *Woodbridge*. In that case the testator's domicil was in New York, and it does not appear from the opinion that the note and mortgage deed were in this State. In this case the domicil was in this Commonwealth, and we think that for the purposes of taxation the mortgage debt may be regarded as having a situs here. This is the view taken in Hanson's Death

Duties, (4th ed.) 239, 240, which is cited apparently with approval by Mr. Dicey, though he calls attention to cases which may tend in another direction. See Dicey, Confl. of Laws, 319, note 1.

It seems to us, therefore, that for the purposes of the tax in question the property in the hands of the executor must be regarded as having been within the jurisdiction of this Commonwealth at the time of the testator's death. See *In re Swift*, 137 N. Y. 77 ; *Miller's estate*, 182 Penn. St. 157.

The petitioners further contend that the succession took place by virtue of the law of New York. But it is settled that the succession to movable property is governed by the law of the owner's domicil at the time of his death. This, it has been often said, is the universal rule, and applies to movables wherever situated. *Stevens* v. *Gaylord*, 11 Mass. 256. *Dawes* v. *Head*, 3 Pick. 128, 144, 145. *Fay* v. *Haven*, 3 Met. 109. *Wilkins* v. *Ellett*, 9 Wall. 740 ; *S. C.* 108 U. S. 256. *Freke* v. *Carbery*, L. R. 16 Eq. 461. *Attorney General* v. *Campbell*, L. R. 5 H. L. 524. *Duncan* v. *Lawson*, 41 Ch. D. 394. *Sill* v. *Worswick*, 1 H. Bl. 665, 690. Dicey, Confl. of Laws, 683. Story, Confl. of Laws, (7th ed.) §§ 380, 481.

If there are movables in a foreign country, the law of the domicil is given an extraterritorial effect by the courts of that country, and in a just and proper sense the succession is said to take place by force of and to be governed by the law of the domicil. Accordingly, it has been held that legacy and succession duties as such were payable at the place of domicil in respect to movable property wherever situated, because in such cases the succession or legacy took effect by virtue of the law of domicil. *Wallace* v. *Attorney General*, L. R. 1 Ch. 1. Dicey, Confl. of Laws, 785. Hanson's Death Duties, 423, 526.

With probate or estate or administration duties as such it is different. They are levied in respect of the control which every government has over the property actually situated within its jurisdiction irrespective of the place of domicil. *Laidlay* v. *Lord Advocate*, 15 App. Cas. 468, 483. Hanson's Death Duties, (4th ed.) 2, 63.

Of course any State or country may impose a tax and give it such name or no name as it chooses, which shall embrace, if so

intended, the various grounds upon which taxes are or may be levied in respect of the devolution of estates of deceased persons, and which shall be leviable according as the facts in each particular case warrant.    In England, for instance, the estate duty, as it is termed, under the Finance Act of 1894 (57 & 58 Vict. c. 30) has largely superseded the probate duty, and under some circumstances takes the place of the legacy and succession duty also.    Hanson's Death Duties, (4th ed.) 62, 63, 81.

But whatever the form of the tax, the succession takes place and is governed by the law of the domicil; and, if the actual situs is in a foreign country, the courts of that country cannot annul the succession established by the law of the domicil.  *Dammert* v. *Osborn*, 141 N. Y. 564.   In further illustration of the extent to which the law of the domicil operates, it is to be noted that the domicil is regarded as the place of principal administration, and any other administration is ancillary to that granted there.    Payment by a foreign debtor to the domiciliary administrator will be a bar to a suit brought by an ancillary administrator subsequently appointed.    *Wilkins* v. *Ellett* and *Stevens* v. *Gaylord, ubi supra.  Hutchins* v. *State Bank*, 12 Met. 421.  *Martin* v. *Gage*, 147 Mass. 204.   And the domiciliary administrator has sufficient standing in the courts of another State to appeal from a decree appointing an ancillary administrator.    *Smith* v. *Sherman*, 4 Cush. 408.   Moreover, it is to be observed, if that is material, that there has been no administration in New York, that the executor was appointed here, and has taken possession of the property by virtue of such appointment and must distribute it and account for it according to the decrees of the courts of this Commonwealth.   To say, therefore, that the succession has taken place by virtue of the law of New York would be no less a fiction than the petitioners insist that the maxim *mobilia sequuntur personam* is when applied to matters of taxation.

The petitioners contend that in *Callahan* v. *Woodbridge* it was held that the succession to the personal property in this State took place by virtue of the law of this State, although the testator was domiciled in New York.   We do not so understand that case.   That case and *Greves* v. *Shaw* and *Moody* v. *Shaw, ubi supra*, rest on the right of a State to impose a tax or duty in

respect to the passing on the death of a non-resident of personal property belonging to him and situated within its jurisdiction. We think that the decree should be affirmed.

*So ordered.*